Thank you, Your Honor. May it please the court. John Metzger on behalf of Tyrone White. So this is a case where we revisit the recurring issue of how the commissioner in a social security disability case may establish the existence of a significant number of jobs within a claimant's residual functional capacity. In this particular case, the agency's vocational expert testified to the existence of approximately 72,000 table worker jobs, 65,000 assembler jobs, and 32,000 film touch-up inspector jobs. Now adding these jobs together yields a cumulative 169,000 jobs in the national economy. Now while that's clearly a significant number under existing circuit precedent, the problem we have is with the vocational expert methodology. On cross-examination, the vocational expert testified that she was using the SkillTrans methodology and she further testified why she believed that methodology to be reliable. The ALJ in her written decision explicitly found that she explicitly found made a finding that SkillTrans methodology is reliable and that's what she was relying on. So the problem in this case is that SkillTrans methodology under the existing version of the software program at that time estimated the existence of only 2,957 table worker jobs. Let me ask you this if I can, I mean we know the numbers from the papers that are in front of us, the numbers that the VE gave and the numbers that you get apparently using the same program. The government has responded, well yeah, but you didn't say anything in front of the ALJ. What's your response to that argument if that's an argument? There are sometimes vocational experts hired by the agency cite to unusual sources or oddball sources or sometimes even sources that don't even exist. It's only after the hearing when I've had a chance to acquire and consult those resources that I would even know whether or not the vocational expert was being, was testifying truthfully as to what those sources say. So it would be impossible. It would be impossible to know at the hearing whether or not vocational experts statements are accurate. Now you're saying that sometimes it's an unusual or oddball source and so on, Skilltran unusual or oddball? It's quite common. I did not own a copy of it at that time, at the time of Mr. White's hearing in 2018. I acquired it later in the year related to another case and it was only then that I discovered this vast discrepancy. So I immediately at that time informed the Appeals Council of the discrepancy. Is it customary that the VE not notify in advance the technology that's going to be used or the program that's going to be used or the numbers that are going to be relied on? Is it customary in other words that the first time you learn about this is in the actual hearing? Yes, we're completely unaware of the sources relied upon by the vocational expert until the hearing itself. It's not like traditional litigation where there's extensive pre-hearing discovery. Generally, there's absolutely no pre-hearing discovery. Is there a way to, normally we like to see these evidentiary disputes develop a full where the case is heard. Isn't there a way to move to reconsider or to challenge the decision of the judge before it goes to the Appeals Council or not? Well, sometimes you get lucky and happen to have the resource on your laptop. Most hearing offices don't even have Wi-Fi so you're not even able to look. I'm asking about something like a motion for reconsideration or something like that. In theory, one could file a motion to reopen the ALJ's decision but there's really not much of a procedural mechanism aside from presenting arguments to the Appeals Council. Is there any restriction? I didn't see one. Is there any restriction on presenting new evidence to the Appeals Council? No, it's explicitly allowed. And as I looked at what little we have from the Appeals Council, they looked as though they accepted the evidence and then just decided that they weren't going to give you anything. Yeah, well the Scheibe court explicitly said that a claimant may raise new evidence casting doubt on the VE's job number estimates before the Appeals Council. That's a direct quote from the Scheibe decision. And if you look at section 406b of the Social Security Act, sentence six explicitly contemplates that at some time sometimes new evidence will be presented for the first time in district court and that is okay presumed as long as there's a valid reason for not presenting it earlier. Right, in your case it was not presented in the first time in the district court but rather was presented to the Appeals Council. It was. And I think that complies, I think both Buck and Scheibe stated that these, that needs to be presented at some point during the administrative proceedings and in this case it certainly was. You know at this point let's hear from the government on this. You'll quite a bit of time here in case you need to respond. Thank you, your honor. Good morning, your honors. Elizabeth here for Kilolo Kijikazi, the acting commissioner of Social Security. There's decades of case law that says vocational expert testimony is inherently reliable as long as it has markers or indicia of reliability. Yeah, there may be decades of precedent but there's also our Buck decision, Buck versus Berryhill, which I'm sure you've read. And I would like to distinguish Buck based on three major points. First is the VE herself, then what happened at the hearing, and then what the ALJ did in the decision. And if you look at, Buck has no information at all about the VE's qualifications, whereas here we have a VE who is a certified rehabilitation counselor, disability management specialist, independent vocational evaluator for California's workers comp, and also a rehab counselor for the department of labor workers comp. She's trained in expert witnessing and in forensic rehabilitation and she's worked since 1984 for private sector in working with people with disabilities as a vocational rehabilitation counselor and branch manager, where she does among other things labor market research, job analyses, and reasonable accommodations. And therefore, she can't be wrong? That's not what I'm saying, but we know here that she is qualified, which per Biasec and Ford and other cases in Bayless, and there's also another case, Terry, which is relatively new, that the qualifications of a VE set out are one of the indicia or markers of a reliability. So, we have that here. We didn't have that in Buck. Then secondly, at the hearing itself, Buck's attorneys had the same program that the VE was using and in real time were coming up with different numbers. And I want to say that the VE here did say she was using Skilltran, but Skilltran has browser. She didn't say she was using only job browser. Skilltran has another program called Oasis, another program called OccuBrowse, and it's not clear here which one or if the ALJ was using more than one. In Buck, it appears from the decision that they were using the same program. And then also, the ALJ curtailed the counselor's ability to keep cross-examining that vocational expert at that hearing. And I would also like to point out that the job numbers the VE came up with in Buck are, you know, I would go more to being unreasonable on their face. You know, 600,000 jobs is a bottling, it's in bottling, and then another 8,800, and then over 200,000 people making conveyor belts. So, that is more unreasonable on its face than what we have here. The jobs here are less obscure than those, and the numbers are much more in the range of reasonableness. Well, you know, that may be right around the margin. On the other hand, Assembler, the VE says they're 65,000. According to the petitioner here in this case, there's zero. I mean, that's a pretty big disparity. That is, and I'm going to say at this point that I, SkillTran is, it's not clear that the VE was just talking about what Mr. Metzger did with the program, and I did the same thing with the program. But it's not clear that that's the only thing the VE was doing. There are other, there's a lot of other features in that particular program, and as I said, there are other programs too. So, it's not clear that that was the only thing the ALJ was, or the VE was doing here. So, may I ask you a procedural question, which is, what, in your view, if any, is the significance of the fact that this evidence was, that the claimant's evidence was presented in the first instance to the Appeals Council rather than to the ALJ? Well, that, as my opponent said, that is, Shaibi does allow for that. It says that at a minimum, the claimant should, to preserve the it actually says, raise the accuracy of the job numbers in the first instance, which did not happen here. It was just the methodology. But then later on, Shaibi kind of backtracked a little bit and just says it's enough for the claimant to have raised the issue of methodology. So, he did that here. But I would also say, in direct contrast to Buck, where there was apparently a lively discussion back and forth at the hearing between the expert, we saw much more, we had more of a record developed there about how that VE was, didn't have the same markers and indicia of reliability that this VE has and had until claimant presented that evidence after the hearing. Okay, but then if you look, well, but so then just to follow up on that, if it's okay for him to present it in the first instance to the Appeals Council, you know, so if we're going to treat that essentially as if it had been presented, you know, treated the same as if it had been presented earlier, you know, if this had been presented to the ALJ, you know, wouldn't it be incumbent on the ALJ to say something? I mean, we have these two very different views of what the numbers are. You know, it may be that it's, you know, consistent with substantial evidence the ALJ could decide that the VE was right and the claimant's numbers are wrong. But he has to give some explanation for resolving the discrepancy, doesn't he? Yes, and if it had been before the ALJ, she would have done that. But the ALJ did and this is also unlike Buck. We have the ALJ speaking up and keep in mind that she didn't have that evidence before at the time. The ALJ discusses the reliability of vocational expert, the fact that she used Skilltran. Again, we don't know which or if multiple programs in that company were used. And she talked about the VE's training and experience. Buck ignored it completely. So Buck, the ALJ and Buck essentially cut off the hearing testimony, promised the claimant that you could submit extra, submit evidence and then completely ignored it. Here we have an ALJ actually discussing the reliability of the VE. And then so, okay, evidence came in after that that contradicts the VE. But substantial evidence is a very low threshold. And the Supreme Court affirmed that in Biastek and said that VE testimony that has indicia and markers of reliability is substantial evidence. And then I would also point to the fact that, okay, so there's contrary evidence in the record. That doesn't mean that evidence is infallible. That doesn't even mean that that evidence is the same thing that the vocational expert was doing. I grant all of that. I guess the concern behind my question is we have no explanation either from the ALJ or the Appeals Council or anyone that there's no explanation from the agency as to why, given these two contradictory views of the numbers, why one was accepted rather than the other. And I mean, we can sort of imagine reasons that there might be, but I'm not sure we can supply those when the agency didn't. Can we? You can, because if evidence is in the record after, in between the ALJ's decision and the Appeals Council, it's part of the record for substantial evidence review. So that gets me back to substantial evidence and how, even if there's contrary evidence in the record, that doesn't preclude a court from finding that the ALJ's decision based on that record before the ALJ was supported by substantial evidence. And the other thing is that even if there is alternative way to look at this and say, like, you know, my opponent has job numbers that he thinks are correct. The ALJ has job numbers that she thinks are correct. That's a difference of opinion that happens in records all the time. And what I would like to say here is that this is, as the court said in Shaibi, that these cases with the job numbers are familiar and recurring. So if what we're saying here is that anytime a capable, educated vocational expert presents cogent testimony, the ALJ accepts that after the fact, or even in between the hearing and the ALJ's decision, someone comes up with alternative numbers, that essentially guts all of that case law that says VE testimony with indicia of reliability is substantial evidence. And then it also means that it completely just annihilates the case law about the reliability. But this is a little bit different because, as I understand it, the, there's some confusion as to what program was used in order to get the data that was relied on by the ALJ. And there are two different ones. And we don't know which one was used and which one is more, there's been no determination as to whether the one that was used is valid. We just don't know. It's not a question of one witness saying this and another witness saying that. It's a little bit different. So it would seem that ordinarily you'd want to send it back and straighten it out. Well, our point is that what the ALJ said there, there has to be some meaning behind these vocational experts' testimony, the expert part of it. There's a reason why they come up with different numbers than attorneys always do after the fact. There has to be a reason why those vocational experts with all of their training and their education are coming up with these numbers. And that in and of itself, based on Fiestek and Ford and Shaibi, should be substantial evidence irrespective of whether or not somebody can come in with contrary evidence after the fact. But any agency has ever said that. Here's a question I have for you, which is, we've got a real problem that's not of your making nor of the other side's. And that is apparently the way these hearings go. There's no advanced communication of the numbers that the VE is going to rely on. So it's not like an ordinary trial in everybody knows what's going to happen. And the question is, so do you present your evidence the best way you can? And in civil litigation, at least the theory is, there are not going to be very many surprises. Here, almost by definition, it's a surprise because you don't get an advance notice as to what the VE is going to say. And under your view of it, whatever the VE says, that's the end of the matter, unless for some reason the claimant was clairvoyant and figured out what the program was going to be, what the numbers were going to be that were going to be relied upon, or had a fancy, fancy computer at his or her desk by which they could instantaneously have access to however many possible programs the VE could have used and however possible many jobs the VE would have found out. But that's not practical. So that's not the system that's set up. The system we have is that the Appeals Council receives evidence. And given that system, it's hard to see how it's fair to say, well, the VE came up with these numbers, the VE was an expert, and that's the end of the matter, unless there is an objection with competing numbers in front of is fair. Claimants absolutely can bring up evidence after the fact, after the hearing, that is, this kind of evidence. That's what should you be open the door for. The difference in this case is that this VE's testimony on its face was reliable. It had, you know... Well, it's not on his face it's reliable until you get the countervailing numbers that come out of the same Skiltran system. I mean, I have no reason to object to the numbers until I see the other numbers. Well, this court has, this is not an unusual situation. And it's not a published case, but Edgington, we cite in our brief, the same thing happened. The claimant came up with very different numbers after the hearing, and this court still upheld the ALJ's decision. So it can happen. And if the agency sees that evidence and thinks that it really does counter the vocational experts' testimony, we do have the opportunity to say, no, this is enough of a conflict that we'll send it back on our own. That didn't happen here because the job numbers that the VE identified were not as outrageous as they were in a case like Buck. Well, you know, on that one, I disagree. The numbers here are pretty starkly variant. I understand you can sort of argue with the margin, but the difference between 66,000 and zero, that's a lot. If you go to that, the point is that the VE was relying on methodology that the ALJ found to be reliable, that the VE said was reliable within the industry. It's a big assumption to say that the evidence that came in after the hearing was the same kind of thing the VE was looking at, and the VE just didn't get the numbers right. That's not supported by this record. And again, substantial evidence being a low threshold. Well, substantial evidence is the threshold you get when the decision maker, whether it's an ALJ or some other decision maker, has all the evidence in front of him or her and says, OK, I go this way because I think the weight of the evidence is here. But the decision maker, the ALJ, did not have that evidence in front of the ALJ. And as far as I can tell, the appeals counsel, while I accepted the evidence, didn't pay any attention to it. Well, the appeals counsel is not required to give any reasoning in this court. There's a whole case, Luther, where the agency tried to argue that the court should look at what reasoning the appeals counsel gave. And this court said, no, we don't care what the appeals counsel said. It's what the ALJ says. So that's not really an argument that helps to claim it here that the VE didn't or that the appeals counsel didn't articulate a reason for this. The appeals counsel addressed that, cited the evidence, and then said, as it's allowed to, just a blanket, we don't think this evidence interferes with the ALJs. The appeals counsel wasn't required to address it, and the ALJ never had a chance. I'm sorry, I didn't hear the first part of it. The ALJ didn't have the opportunity, and that's where it's supposed to be straightened out. That's the problem. So whether or not the ALJ ought to see the conflict and resolve it. Well, I understand where you're going, Your Honors, but I'm going to say once again that substantial evidence is a low standard. And from what the ALJ was seeing, it is possible to uphold the decision based on what this particularly educated and qualified VE provided at the hearing. Yeah, no, no, we take your points. Response? You're muted. Thank you, Your Honor. I just want to point out that there was a lot of discussion about what program the vocational expert was using. In this case, SkillTran, according to their website, only makes one and one only program that estimates job number incidence at the DOT level, and that program is Job Browser Pro. The other two programs cited by my opponent, OASIS and SOC level, which is a larger group of many, many jobs, like the assembler job, for instance, is one of 1,519 jobs in that SOC group. So if you were to go to, according to the SkillTran website, if you were to go use OASIS or Occubrowse, the only information they would give you about job numbers for those two programs would be that that occupation is one of 1,519 jobs in an SOC group that at that time contained 230,760 jobs. So just to make sure I understand what you're saying, you're saying that while SkillTran may have several programs, it's apparent that the VE was using the same program as you're using to come up with the different numbers. Is that what you're saying? Yeah, so when the vocational expert testified that she was using SkillTran's methodology, SkillTran's methodology for predicting job incidence data at the DOT level is only available in one program and one program only. Okay. Can I ask, I mean, so is it your view that, you know, sort of in essentially any case where we have a decision from the ALJ and the claimant says, you know, here's some evidence that shows the VE numbers were wrong and presents that to the Appeals Council, is it the case that the Appeals Council is essentially always going to have to say, you know, we need to reopen this and have the ALJ look at it? Because otherwise when it gets to us, the claimant is going to say what you're saying, that, you know, there's this unexplained conflict and we don't have any analysis of why one set of numbers was accepted rather than the others. So is that how it works in your view? And should we be concerned about that? Well, yeah, I think a couple of points. Yeah, I agree with you that it was the Appeals Council that erred in this case. They just didn't do their job very well. It was not the ALJ, the evidence was not in front of the ALJ, I admit that. But the Appeals Council have an they flubbed it in this case. As a particularly procedural matter, the ALJ is not a party to this action, it's the Acting Commissioner. And it's her decision that I'm challenging. It's her decision that was decided through the Appeals Council, not the ALJ's decision directly that I'm challenging. Yeah, but I take Judge Miller's that is, it may be in this case, given that the same program, at least according to what we're presented with, was relied on by both the VE and by you, and the numbers are so starkly different, that we need something out of the either the ALJ if the evidence is in front of the ALJ or in front of the Appeals Council when evidence is appropriately presented to the ALJ that they got to respond. But you do worry you're opening the door for all kinds of less stark differences, less clear basis for disagreement, and a very heavy burden on then on the Appeals Council. How do I mean, there's to use the old law school trope, I mean, there's a slippery slope here. And how do we keep ourselves from going to the bottom? Well, here's the thing, we all, the Commissioner's agents, including the ALJ and permissibly, and probably I assume her attorneys, we all have access to the same data. They have access to all of the programs on their internal systems. They know whether or not vocational expert is telling the truth or not, or whether a testimony was accurate. Or at least they can know, they may or may not know at the time of the testimony. They choose not, I think they choose not to know a lot of times. I think they just drop the ball sometimes. Okay, any further questions from the bench? Thank you very much. Thank both sides for your argument. White versus Kiyokaze submitted for decision. Thank you very much.
judges: SCHROEDER, FLETCHER, MILLER